UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,

        *Plaintiff*,

   v.

JANARD SMITH,

        *Defendant*.

No. 23-cv-2747 (DLF)

## MEMORANDUM OPINION & ORDER

In this action, the Board of Governors of the Federal Reserve System ("Board") seeks recovery of $42,095 in educational benefits it paid to Janard Smith. Smith counterclaims against the Board for defamation. Before the Court is the Board's motion to dismiss Smith's counterclaim and for judgment on the pleadings. Dkt. 10. For the reasons that follow, the Court will grant the Board's motion in part and deny it in part.

### I.   BACKGROUND[1]

The Board operates an "academic assistance plan" (the "Plan") "for the benefit of [its] employees." Pl.'s Ex. 1B at 1, Dkt. 10-3. Under the Plan, "the Board provides employees with financial assistance to enroll in qualifying courses." *Id.* But employees cannot double-dip: "Employees receiving educational assistance (such as financial aid or scholarships) from sources other than the Board, such as the Department of Veterans Affairs or their educational institution, will be granted academic assistance only after those funds have been exhausted." *Id.* at 5. "Failure

---

[1] Consistent with the applicable legal standard, what follows is drawn from "the undisputed facts that have been alleged in both parties' pleadings." *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) (Brown Jackson, *J.*).

to disclose educational assistance provided by entities other than the Board may result in disciplinary action . . . and the employee may be required to reimburse the Board for any educational assistance it provided if the employee received other educational assistance for the same costs that the Board reimbursed." *Id.*

From 2014 through January 2017, Smith applied for benefits under the Plan. Compl. ¶ 15, Dkt. 1; *accord* Answer ¶ 15, Dkt. 6. His application forms indicated that he had "read and underst[ood] the Board's Academic Assistance Policy and agree[d] to be held accountable to" it. Dkt. 10-4 at 1, Dkt. 10-5 at 1, Dkt. 10-6 at 1. Even so, "Smith received financial assistance from the U.S. Department of Veterans Affairs ('VA Benefits') for all of the . . . coursework for which he sought financial assistance from the Board." Compl. ¶ 19; *accord* Answer ¶ 19. In total, "the Board made payments to him under the Plan totaling $42,095 for coursework also paid for by VA Benefits." Compl. ¶ 20; *accord* Answer ¶ 20.

The Board sued for, among other things, breach of contract and unjust enrichment. Compl. ¶¶ 28–37. Smith answered and counterclaimed for defamation. Dkts. 6, 7. In support of his counterclaim, Smith alleged that he "had trouble communicating [with] and receiving benefits from" the Department of Veteran's Affairs. Def.'s Countercl. ¶ 10, Dkt. 7. Further—in Smith's telling at least—the Department was "inconsistent with disbursing [its] funds" and "communicated the expenses were exhausted." *Id.* Smith "made Federal Reserve personnel well aware" of these problems, but "next steps [were] not thoroughly communicated" to him. Def.'s Resp. to Gov't Reply at 2, Dkt. 14. "[B]y the time anything was done, the Defendant was asked by the Federal Reserve's HR to resign and [was] told this would settle the differences and confusion." *Id.* The Board's Human Resources staff led Smith "to believe that if he voluntarily resigned, the [Board] would forego all legal actions and not seek reimbursement." Def.'s Countercl. ¶ 13.

The Board moves for judgment on the pleadings and to dismiss Smith's counterclaim for lack of jurisdiction. Dkt. 10.

## II.   LEGAL STANDARDS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because "[s]overeign immunity is jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), claims barred by the United States' sovereign immunity are "subject to dismissal under Rule 12(b)(1)," *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013).

Under Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Movants under Rule 12(c) face a "heavy burden." *Dist. No. 1, Pac. Coast Dist. v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019). "To prevail on a Rule 12(c) motion, '[t]he moving party must show that no material issue of fact remains to be [re]solved and that it is entitled to judgment as a matter of law.'" *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (Brown Jackson, *J.*) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 888 F. Supp. 2d 189, 191 (D.D.C. 2012)). "[I]n deciding a Rule 12(c) motion . . . the [C]ourt relies on 'the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the [C]ourt may take judicial notice.'" *Id.* (quoting *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010)). "[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Liberty Mar.*, 933 F.3d at 761 (cleaned up). Similarly, a defendant may defeat a Rule 12(c) motion by pleading a valid affirmative defense in his answer. 5 Wright & Miller, *Federal Practice & Procedure* § 1368 & nn. 23–26 (3d ed. 2024 update) (citing cases).

**III.   DISCUSSION**

Starting with jurisdiction, the Court will dismiss Smith's defamation counterclaim because the Board is immune from it.  In addition, because Smith asserts an affirmative defense to which the Board has not responded, the Court will deny the Board's motion for judgment on the pleadings.

**A.   Smith's Counterclaim**

The Court will grant the Board's motion to dismiss Smith's counterclaim for lack of jurisdiction.  "Absent a waiver, sovereign immunity shields the United States and its agencies from suit."  *Meyer*, 510 U.S. at 475.  This principle applies to counterclaims brought against the United States.  *United States v. Shaw*, 309 U.S. 495, 501–03 (1940).  As the Supreme Court has explained, the United States does not waive its sovereign immunity by "voluntarily seek[ing] the aid of the courts for the collection of its indebtedness."  *Id.* at 501.

The Federal Tort Claims Act waives the United States' sovereign immunity for certain tort claims brought against it.  28 U.S.C. §§ 1346(b), 2674.  It does not apply, however, to "[a]ny claim arising out of . . . libel, slander, misrepresentation, [or] deceit."  *Id.* § 2680(h).

Given these principles, the Court lacks jurisdiction over Smith's counterclaim.  Because Smith's counterclaim alleges that the Board "made knowingly false statements" about him, Countercl. ¶ 23, it arises out of libel or slander, *see, e.g.*, *Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991).  Thus, the United States remains immune from it despite the Federal Tort Claims Act.  *See id.*  And because Smith identifies no other statute waiving the United States' sovereign immunity from his defamation claim, it follows that the Court must dismiss that claim for lack of jurisdiction.

It makes no difference that compulsory counterclaims are immune from the Claims Act's exhaustion requirements. 28 U.S.C. § 2675(a). Whether or not Smith exhausted his administrative remedies is wholly separate from whether his claim arises out of libel or slander. Because it does, the Court lacks jurisdiction over it despite the Federal Tort Claims Act.

For these reasons, the Court will dismiss Smith's counterclaim for lack of jurisdiction.

**B.     Judgment on the Pleadings**

That leaves the Board's motion. Federal common law governs contract claims by the federal government and its agencies, including the Board. *See Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988). To establish breach of contract under federal common law, "a party must allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Red Lake Band of Chippewa Indians v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1, 12 (D.D.C. 2009) (quoting *Pryor v. United States*, 85 Fed. Cl. 97, 104 (Fed. Cl. 2008)).

The federal common law of contracts recognizes an affirmative defense of release. *See, e.g.*, *United States v. Price*, 50 U.S. 83, 92 (1850); *Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, 106 n.7 (D.D.C. 2019) (recognizing release defenses); *see also Perry v. MSPB*, 582 U.S. 420, 435 n.9 (2017) (describing release as an affirmative defense). "[A] release is a form of contract." *Stanley*, 394 F. Supp. 3d at 106 (quoting *Am. Civ. Constr., LLC v. Fort Myer Constr. Corp.*, 246 F. Supp. 3d 309, 321 (D.D.C 2017)). To form a valid release—or for that matter any contract—with the federal government, "four basic requirements must be met: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (citing cases).

5

It is "a matter of some debate as to whether" the pleading standard announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "applies to affirmative defenses" like release. *Moore v. United States*, 318 F. Supp. 3d 188, 193 (D.D.C. 2018). The weight of authority is that it does not. *Id.* (citing cases); 5 Wright & Miller, *Federal Practice & Procedure* § 1274 & n.9. Rather, it is enough to "assert[]" an affirmative defense such as release "in one sentence." *Moore*, 318 F. Supp. 3d at 193.

All this dooms the Board's motion for judgment on the pleadings. Smith's Answer asserts release as an affirmative defense. Answer ¶ 59. This affirmative defense, if proven, could establish that the Board released any of its claims against Smith under the Plan. For example, Smith could show—as he alleges in his counterclaim—that the Board's agents told him "that if he voluntarily resigned," the Board "would forego all legal actions and not seek reimbursement."[2] Def.'s Countercl. ¶ 13. That showing could well establish an affirmative defense of release: the Board's promise to forego reimbursement is not ambiguous, its exchange of a release for Smith's resignation counts as consideration, and the remaining contract elements (mutuality of intent and actual authority) depend on facts that neither side has pled. *See Anderson*, 344 F.3d at 1353. Thus, judgment on the pleadings is improper because there exists "an affirmative defense which, if proved, would defeat plaintiff's recovery." *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002).

---

[2] In adjudicating a Rule 12(c) motion, the Court may not look beyond the parties' pleadings without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d). It is not obvious that Smith's allegations in support of his counterclaim—as opposed to his answer to the Board's complaint—count as applicable "pleadings" for purposes of the Board's Rule 12(c) motion. Here, however, the Court uses the allegations in Smith's counterclaim exclusively to show by way of example that Smith has raised a viable affirmative defense.

To be sure, Smith's papers in opposition to the Board's motion to dismiss do not mention release. Even so, it remains the Board's burden to show that it is entitled to judgment on the pleadings in view of the content of Smith's answer, which does raise a release defense. *See, e.g.*, *Murphy*, 326 F.R.D. at 49. Because the Board has not discharged that burden, the Court will not enter judgment in its favor. *Cf. Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016); *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 345 (D.C. Cir. 2018). The Court further notes that the Board has never moved to strike Smith's release defense as "insufficient." Fed. R. Civ. P. 12(f).

One final point merits discussion. Before this Court, Smith's principal defense has been unilateral mistake rather than release. But it is not at all clear that this defense can succeed, even assuming—perhaps contrary to fact—that Smith can establish the elements of mistake under federal common law. For one thing, mistake is generally characterized as an affirmative defense. *See, e.g.*, *Ameriserv Tr. v. United States*, 125 Fed. Cl. 733, 746 (Fed. Cl. 2016). Smith's answer to the Board's complaint does not raise unilateral mistake as an affirmative defense, suggesting that he may have forfeited it under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(h). For another, although unilateral mistake can render a contract voidable, voiding the Plan would not get Smith where he needs to go. If the Plan is void, Smith was never entitled to collect his $42,095 under it, making the money potentially subject to recovery by the Board under principles of restitution. Restatement (Third) of Restitution § 34 (Am. L. Inst. 2011). In short, although the Court will reject the Board's motion for judgment on the pleadings, it will not do so based on Smith's defense of unilateral mistake.

For these reasons, the Court will deny the Board's motion for judgment on the pleadings.

Accordingly, it is

**ORDERED** that the Board's motion for judgment on the pleadings, Dkt. 10, is **DENIED**. It is further

**ORDERED** that the Board's motion to dismiss Smith's counterclaim for lack of subject-matter jurisdiction, Dkt. 10, is **GRANTED**. Smith's counterclaim for defamation is **DISMISSED** without prejudice for lack of jurisdiction. It is further

**ORDERED** that the parties shall file a status report proposing a schedule for further proceedings on or before June 14, 2024. The parties agree that "[t]here is no discovery as of right in this proceeding." Notice Regarding the Joint Report Pursuant to Local Civil Rule 16.3(d) at 2, Dkt. 11; *see* Fed. R. Civ. P.26(a)(1)(B)(vi). Accordingly, the parties' status report shall state each party's position on (1) whether the Court should authorize discovery and on (2) the proper scope of discovery if authorized. In view of this case's limited scope and amount in controversy, the Court does not expect that substantial discovery will be appropriate. *See* Fed. R. Civ. P. 26(b)(1). Further, the Court will not be inclined to authorize deposition discovery unless document discovery shows that depositions are necessary.

**SO ORDERED.**

May 30, 2024

DABNEY L. FRIEDRICH
United States District Judge