UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,

        *Plaintiff*,

   v.

JANARD SMITH,

        *Defendant.*

No. 23-cv-02747 (DLF)

**MEMORANDUM OPINION**

In this action, the Board of Governors of the Federal Reserve System ("Board") seeks recovery of $42,095 in educational benefits it paid to Janard Smith. Before the Court is the Board's motion for summary judgment, Dkt. 19. For the reasons that follow, the Court will grant the Board's motion.

**I.   FACTS**

As discussed in more detail in the Court's May 30, 2024, Memorandum Opinion and Order, 2024 WL 2803225 (D.D.C. May 30, 2024), the Board operates an "academic assistance plan" (the "Plan") that provides educational assistance to Board employees. Pl.'s Ex. 1A at 1, Dkt. 19-5. But if employees have other sources of educational funding, such as the Department of Veterans Affairs, they are not entitled to assistance from the Board until those other sources are exhausted. *Id.* at 7. If the Board learns that an employee received assistance from another source for costs the Board covered, the Board can seek reimbursement. *Id.*

On six occasions from 2014 through January 2017, Smith applied for Plan benefits. Complaint ¶¶ 15, 20, Dkt. 1; Answer ¶¶ 15, 20, Dkt. 6. On his application form, he indicated he

had "read and underst[ood] the Board's Academic Assistance Policy" and agreed "the Board may take legal action to collect any monies due." Pl.'s Ex. 2 at 1, Dkt. 19-7; Pl.'s Ex. 3 at 1, Dkt. 19-8. At the same time, Smith received financial assistance from the U.S. Department of Veterans Affairs for the same coursework the Board was funding. Compl. ¶ 19; Answer ¶ 19. In total, the Board paid him $42,095 for coursework that the Department of Veterans Affairs covered. Compl. ¶ 20; Answer ¶ 20.

The Board sued to recover the $42,095 plus interest and statutory penalties. Compl. ¶ 42. In his answer, Smith raised the affirmative defense that he had been released from his obligation to repay the Board. Answer ¶ 59. The Court denied the Board's motion for judgment on the pleadings, Dkt. 10, and allowed limited discovery for the purpose of determining whether a material fact dispute existed regarding Smith's affirmative defense of release. 2024 WL 2803225, at *4. Discovery has now concluded.

## II.   LEGAL STANDARD

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

It is well established, however, that "a plaintiff opposing summary judgment" must "substantiate [his allegations] with evidence" that "a reasonable jury could credit in support of each essential element of her claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANALYSIS

The Board argues Smith is contractually obligated to reimburse it $42,095 for tuition payments that the Department of Veterans Affairs paid. Mot. for Summ. J. at 7, Dkt. 19. Federal common law governs contract claims by the federal government and its agencies, including the Board. *See Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988). To establish breach of contract under federal common law, "a party must allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Red Lake Band of Chippewa Indians v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1, 12 (D.D.C. 2009) (quoting *Pryor v. United States*, 85 Fed. Cl. 97, 104 (Fed. Cl. 2008)).

The undisputed evidence supports the existence of a contract which Smith does not appear to contest. He instead focuses on whether he breached a contractual obligation.[1] Smith agrees

---

[1] Smith also appears to raise the defense of unilateral mistake, but the mistake he alleges relates to his release from the contract, rather than a mistake in the initial formation of the contract. *See* Opp'n at 8, Dkt. 21 ("[T]he Defendant further contends that this situation constitutes a unilateral mistake, as he genuinely believed that his conversation with Ms. Bibbs had released him from his repayment obligations."). This argument is addressed below. To the extent Smith intends to assert the defense of unilateral mistake as an independent defense, he fails to establish the elements of the affirmative defense. And even if he properly raised the defense of mistake, it would be unsuccessful for the reasons stated in the Court's May 30 order. 2024 WL 2803225, at *4.

that he submitted applications to receive financial assistance from the Board.  Opp'n ¶ 5; Compl. ¶ 15; Answer ¶ 15.  He also admits that in submitting that form, he agreed he "read and underst[ood] the Board's Academic Assistance policy and agree[d] to be held accountable to the terms of the Plan."  Opp'n ¶ 6.  Smith's signature indicates his acceptance of the Board's funding offer and the formation of a valid contract.  *See Skrynnikov v. Fed. Nat. Mortg. Ass'n*, 943 F. Supp. 2d 172, 177 (D.D.C. 2013).  He also concedes that the Plan prohibited receiving double payments for the same coursework and required reimbursement for overpayment.  Opp'n ¶¶ 3, 4.  Despite this, Smith admits he received funding from both the Department of Veteran Affairs and the Board for the same coursework, totaling $42,095.  Opp'n ¶¶ 7, 8.  Thus, the undisputed facts show Smith breached his contractual obligations, causing damages of at least $42,095.

Smith offers two responses.  First, he argues that he did not breach the contract because he received the VA funds *after* the Board had already paid him.  Opp'n at 5, 7.  But the timing of the funds is immaterial, as nothing in the contract suggests that Smith could keep the double payments as long as the Board paid him first.  Indeed, the Plan confirms the opposite is true, as it states unequivocally that "the employee may be required to reimburse the Board for any educational assistance it provided if the employee received other educational assistance for the same costs."  Pl.'s Ex. 1B at 5, Dkt. 19-6.  Other portions of the contract also require reimbursement if the Board initially overpays.  *See id.* at 4 ("[T]he employee must submit documentation that establishes the actual cost…and must reimburse the Board for the difference.").

Second, Smith points out that he did not act with "fraudulent intent."  Opp'n at 5, 9.  Even if true, this fact is immaterial.  Intent is not necessary to prove breach of contract.  A defendant is still liable for their contractual obligations, even if breach was inadvertent or unintentional.  *Texas v. New Mexico*, 482 U.S. 124, 129 (1987).

4

Because the Board has met its burden in showing a breach of a valid contract, it is entitled to summary judgment unless Smith can establish disputed facts regarding his affirmative defense. *Cf. Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 74 (D.D.C. 2015). Smith attempts to do so by asserting that the Board released him from his reimbursement obligation, which is an affirmative defense under the federal common law. *See, e.g., United States v. Price*, 50 U.S. 83, 92 (1850). To form a valid release with the federal government, "four basic requirements must be met: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). Smith fails to meet his burden of demonstrating actual authority.

To support his defense, Smith asserts that a Board employee, Kara Bibbs, informed him during a phone call that if he resigned, the matter would be resolved.[2] Def.'s Resp. to Interr. at 2, Dkt. 21-1. According to Smith, he believed that phone call, and his subsequent resignation absolved him of any obligation to reimburse the Board. *Id.* But this conversation can only support Smith's affirmative defense if Bibbs had actual authority on behalf of the Board to release him from reimbursement obligations. *Anderson*, 344 F.3d at 1353. The undisputed facts show that she did not.

The Plan designated one employee—the Board member in charge of Organizational Development and Learning—as having authority to grant exemptions to obligations. Pl.'s Ex. 1B, at 5–6. Throughout the period in dispute here, Catherine Jack served in that role. Jack Decl. ¶¶ 3, 4, Dkt. 19-4. Jack testified that she never waived Smith's obligations, and Smith does not dispute

---

[2] Smith's briefing focuses on the fact dispute as to whether Bibbs actually made the alleged statements during the phone call. But that dispute is immaterial because the undisputed facts show Bibbs lacked actual authority to release him, even if she made the representation.

this.  *Id.* ¶ 5; Opp'n at 10–11.  Instead, Smith says that he believed at the time that Bibbs had the requisite authority.  Opp'n at 10.  But that is not enough.  Actual authority requires that the agent had the power according to the principal's "manifestations of consent to [the agent]." Restatement (Second) of Agency § 7.  In other words, subjective belief is irrelevant.  *Harbert/Lummus Agrifuels Projs. v. United States*, 142 F.3d 1429, 1432 (Fed. Cir. 1998).  Smith speculates that Jack delegated her authority to Bibbs, but he offers no evidence to support his contention.

The undisputed facts demonstrate that Smith is contractually obligated to reimburse the Board for the tuition overpayments he received.  Accordingly, the Court will grant the Board's motion for summary judgment and direct Smith to pay $42,095, plus interest and penalties.

## CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment is granted.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
December 2, 2024                                          United States District Judge